I will call the next matter on our calendar, which is Meseli v. Mehr. Morning, counsel. Morning, both of you. Morning, Your Honor. You're muted, counsel. Can you hear me now, Your Honors? Yes. Yes, Your Honors. My name is Attorney David DeRosa. I represent Mr. Atelier Meseli. Mr. Meseli is in the room with me, behind me, just sort of the record. The first issue, we want to focus in this oral argument, Your Honors, on the timeline that the district court found, because it's rather important to the analysis of this claim, specifically the retaliatory retaliation claim. There was a letter filed in June of 2015 with the chief state's attorney alleging certain improper misconduct by Guy Scaife, who's the town attorney that's located in A203 of our appendix. The letter sets forth by Mr. Meseli that there were certain accusations in regards to his property, and as a citizen of the town of Rocky Hill, claiming he was being abused in his process. But what is central to our retaliation claim and what this district court needs to look carefully at is this record, because the fact is that the court concludes on page 27. Excuse me. It concludes in its opinion that this letter did not come to the attention of his employer at page 26, SPA 26 of my appendix, Your Honor, of the briefs, that the court put special emphasis on the fact that they were not aware of Mr. Meseli's June 19, 2015 letter to the office of the chief state's attorney until February 2, 2016, in which he files a complaint with the CHRO. Your Honor, I respectfully represent that that's not an accurate reflection of what this record shows. If your honors look at the one of the internal investigation was conducted by Lieutenant Catania, Lieutenant Catania reports in his deposition, which is part of the record, located at pages 8689 through 693, that essentially he was aware of this letter well before that date. The reason that's important is because that that letter and the fact that he issued that letter was central to his ultimate termination insofar as being retaliated against when he made a complaint as a citizen of the town of Rocky Hill. Counsel, was this letter that he made as a citizen on a matter of public concern, or was it only about his concerns? Your Honor, I would suggest that it was a matter of public concern insofar as he was asking for a criminal investigation into an abuse of power on behalf of a town official, who was, if you read the nature of the charges, he was concerned that he was overstepping, that this town official was overstepping his bounds and misusing the power in his management. And therefore, as a pro as asking for a prosecution, it falls within the caveat of petitioning the government for redress and protection under the First Amendment. That's that's what we argued below in our brief. We argued specifically in the reply brief. Your Honor, I don't have a page in front of me, but I was reviewing it yesterday. So when the district court found that it was all relating to Mr. Maselli personally, he was in error? I don't believe that's correct. Yeah, I don't believe that it was in Mr. Maselli's personal claim. See, we have to make sure the case law in this area is generally when when people bring this claim and it's refuted, the court doesn't accept it to the context of unemployment in his employment. In other words, he's complaining about certain conduct within his employment as a police officer. It has never this entire complaint wasn't about him being a police officer. It was about how he was being treated as a citizen. And when he did that, they retaliated against him, resulting in it's our position resulting in an actionable, you know, ADA, you know, retaliation claim. That's actionable before a jury and that that he was he was he wasn't talking at all about his role as a police officer, how he was treated as a police officer. Anything dealing with it being being a police officer. It was simply him as a citizen. It just happened to be that you are suggesting that we change the analysis a little bit since, for example, Lynch v. Ackley, you're suggesting that in lieu of instead of it being a matter of public concern, really what we should be thinking about and the way that we should be thinking about these cases is, does it relate to the person's job? Is it that limited? Because that is not consistent with our case law, frankly. But but you're suggesting that we should so limit it. Is that right? Well, your honor, I'm that's an interesting question. I'm not I'm not the reason I'm asking, because I realize I realize I realize. But but I'm not asking to limit. I'm not asking. I'm. I want to be careful here. I'm not making broad pronouncements. I think we fall within the case law. Well, it sounds like a broad. It sounds like a broad leap, frankly. When you say that the limitation that we've identified or the analysis that we've identified is really about whether the complaint, the letter, that whatever it is, relates to the job as opposed to relates to a matter of public concern. And I mean, I think that I my characterization, that's an argument I'm making, but I'm not trying to make a broad pronouncement for change in the law. What I'm saying is if you read the line of cases, I just happen to say that the factual underpinnings of those cases, this argument is usually refuted in in a situation in which of which a defendant like myself, a plaintiff like myself is claiming, well, I have a First Amendment right because I was in the midst of my employment. What I'm suggesting is that is not the facts of this case. I'm trying to distinguish the line of cases more than suggest that the court should be passing some new law. I think more more more more correctly is to state that under the analysis. And I believe I said this in my reply brief of the but for causation that that I am suggesting that it's that there's more that the analysis that this court has adopted in. The speech was taken versus the village of Merrimack or sixty five third ninety six that the speech was a motivating factor in an adverse employment action. And that's a broader analysis than a buck for a buck for, you know, a buck for analysis, which is like the sole cause. I'm suggesting that in addition to other concerns, that the retaliation of this letter is but a factor to be considered in terms of it's a motivating factor. That's really where I was focusing my argument. And so, of course, you're making a First Amendment retaliation. And so, of course, the argument is going to be the speech motivated, whatever adverse action was undertaken by the employer. But the question that teachers pooler was asking was, isn't this how is this a matter? When I read this letter, it does not appear to be a matter of public concern. And what you're saying is actually it's so long as it doesn't relate to his job. It fits within our jurisprudence relating to First Amendment retaliation. And I have difficulty seeing that. Well, your honor, I am suggesting that just because somebody files a brings official corruption to the attention of a prosecuting authority, you should not be retaliated against for that purpose. Yeah, that's ultimately what I'm saying. And I'm saying you didn't do in the context of his employment. And what and what the point I'm trying to make is did it as a citizen. Your honor, as I say, I've run out of time. I have reserved one minute for a bottle. Yes, you have. Thank you, counsel. We'll hear for counsel for Mr. Mayor and others. Thank you, your honor. May it please the court. Michael Rose for the defendant at police. The question was asked about changing the court's jurisprudence on a matter of public concern. And your honor cited Lynch versus Ackley, which I've just brought up. And I noted that in that case, particularly the circuit broke chief Ackley's speech down into different categories. And if you're familiar with the facts of that case, it involved a union president who was making a variety of complaints about the chief's competence and efficacy. And the circuit went through each essentially one of those comments and looked on whether it was speech on a matter of public concern. So the union endorsement piece was not necessarily speech on a matter of public concern. Some of his other personal grievances were not. And then the circuit looked at a few matters that might be. And that's really what's missing from the police argument here is because when we look at the letter that Mr. Maselli wrote, I'm really at a loss for seeing what is speech as a private citizen on a matter of public concern. I'm really not seeing it. He talks about zoning problems. He talks about his neighbor making complaints against him. He's talking about a host of things. It's compost being regulated for or blight. These really all have to do with his own personal disputes and are of nothing but any real public concern other than the conclusory statement that Guy Skate is abusing his power, which is a singular conclusory statement. So I think with respect to this letter, there's nothing in there that speech on a matter of public concern, although it's important to the plaintiff. And one of the things we tried to argue in the Ackley case was that although it was important to at the time Officer Lynch, it wasn't of interest to the entire community. And I know that the district court disagreed with us on that case. The district court said, well, certainly overtime is a matter of public concern. And it really wasn't in that. I think really that's what we're talking about here, where this this plaintiff has a complaint that he wished to raise. He raised it. It's certainly not speech on a matter of public concern from our perspective. But even even if it were, I'd like to take up the timeline challenge that my colleague raised. He said the timeline shows that the letter was written on June 19th and that Lieutenant Katania was aware of the letter. Just like to dip my toe, if I could, into the causation piece here. First of all, that's Katania never said that he told anybody in the decision making capacity about the letter before it received it in February. There's no record evidence of that between page 689 and 693, nor am I aware of any. Equally important, Katania is not the decision maker here. Dave's not the decision maker here. The decision maker is a gentleman named John Mayer. And he's nary mentioned in this brief at all. You know, as I as I was preparing for this, your honor, I realized that one of the wonderful things about the way we adjudicate cases is that we have a broad set of facts and legal arguments and we keep refining them. And as I reviewed the plaintiff's reply, I realized that this case is about two separate points, one involving the First Amendment and one involving the ADA retaliation piece. So leaving aside whether this is a matter of speech on a matter of public concern, we look at the causation standard for retaliation. And I believe that my colleague has misinterpreted the case law there. Of course, you need to show that speech was a matter of concern and was a substantial motivating factor in the decision. But you still have to find that it was essentially but for causation. And I cite Nomefsky, N-A-U-M-O-V-S-K-I versus Norris 934 at third 200 footnote 37 on page 214, which indicates something that that's not all that of a surprise because of Mount Healthy that the plaintiff has to establish, yes, it was a substantial motivating factor and also the but for factor. Because as the Supreme Court in Mount Healthy, we cannot put somebody who engaged in this First Amendment activity, even if it's protected, in a better situation than they would have been had they not. And as your honors may recall from Mount Healthy, we had a public school teacher who had two grievances. One was about the dress code policy, and he was also reprimanded for obscene gestures to students. And the U.S. Supreme Court said, OK, perhaps his comments about the dress code are protected. But those comments are not the but for cause of him being let go because he engaged in obscene behavior to students. We can't have people who engage in obscene behavior to students then be insulated from discipline because they engaged in protected activity. Are you are are you relying on the result of the arbitration? Well, both in a sense. And I do think the results of the arbitration is important. I wouldn't rely heavily on that. Yes, because we've got not only a finding by an arbitration panel. And I do want to correct oversight in our brief, your honor. I think we said it was unanimous. And I just want to correct that. I'm not sure that the labor representative voted in favor of us. But in any event, it was a it wasn't it was it was confirmed by the Superior Court. It was it was. And at that point, we get into our Collins versus New York City Transit District. And I'm litigating this in some other areas. I use the phrase all but precluded. So it's not collateral estoppel per se because of the Alexander Gardner case. But what it is is a very persuasive. Defensing finding that then the side who wishes to disregard the arbitration finding has to come forward with new evidence, has to show that they could have couldn't have discovered it earlier or show bias or corruption. Those issues aren't brief. This is a very, very strong ground. So, again, taking that body of law and then supplementing it with the Mount Healthy line, what we have is a situation in which we have an officer who didn't just lie in an IA, but he lied to the Federal Bureau of Investigation. That's the finding. The felon. He lied to the arbitration panel. They found that they found that there was no and I'm going to get in the facts a little bit. They found that there was no silent auction, that there was no ad placed. Nothing. That's a factual finding. This is the Humvee. Right. Right. So sort of how this all started, I think, in Mr. Maselli's mind was a key thing was you have a new town manager who said, how did I lose a ten thousand dollar Humvee for 50 bucks? A hundred. Oh, well, a hundred because there was a tractor also. So you've got to figure the tractor is worth something, too, is a big pump. So, you know, where I come from, those are probably worth a lot more. But that's what started Mr. Scape on this journey. He wanted to find out how that happened. And Mr. Maselli said, well, there was this auction that I saw in the newspaper. So the record evidence is that there's no such auction. There's a reference to an email in which John Mayer says these are sort of the parameters that I'd like you to look at in the ad, but there's no ad. If there was no auction, what is the supposition about how Mr. Maselli got the tractor trailer? Well, Mr. Parent is a friend of mine, so I'd like to be gentle. But it appears as though all the eyes were not. He was the only bidder on something that we have valued at over ten thousand dollars. So I've talked about the but for causation. I would just like to circle back to the fact that the plaintiff hasn't even identified how Rocky Hill would be liable because Mr. Scape, even if he knew about this, was gone. So if Scape had the animosity because he was reported in a letter to the statewide prosecuting authorities, where does that get us with Mr. Mayer? Why did Mr. Mayer let Mr. Maselli go? He was the decision maker. Your Honor, if I can just very briefly in the next half a minute circle to the ADA retaliation. Counsel, I think, mistakenly says that but for is not the law in this circuit. Your Honor's rule. N.A.T.O.V.S.K.Y. versus City of New York at 921 F. Third, 337. That, in fact, but for is our standard. And it's important because we use the same language because of an ADA, as we do now in the Rehab Act, as we do in the Title seven body of law. And that's a burden that this plaintiff cannot meet again because of our causation element. He cannot prove that somebody in Rocky Hill saw that he filed a CHRO response and said because of that, we are going to let him go. Your Honor, I thank you for your time. I believe that the record evidence and the briefing are clear that there is no genuine issue of material fact here. Any issues that were raised in Mr. Miscellany's library were not briefed early. And I ask you to affirm the judgment of the district court. Thank you, Counsel. Mr. DeRosa, you reserved one minute for rebuttal. Yes, Your Honor. The but for causation analysis we address. I address in my reply brief. There's a split authority circuits and they need not be addressed here. That's a 1617 of my brief. We I think it must follow. And I'm sympathetic to the argument to your argument. But I think it's it must follow from Nassar that the Supreme Court decision. But anyway. All right. Well, Your Honor, the other thing is that this council keeps bringing up the fact that they were not aware of this letter. And that's what the district they convinced the district court of the same. Your Honor's like I implore you a 689 when asked when did he learn about the letter? This is Mr. Catania and my my trial lawyer gave me a date of August 6, 2015, which was two months after writing the letter. And well, before the CHR complaint, he says, so I was aware of it. He was aware of the letter. It was part of their analysis. They were aware of it. And therefore, we establish what was necessary to to submit it to to the to the jury. OK. And with regards to the balance of I've run out of time. So I don't know if the court has any questions of me at this time. Other than I have no questions. Jacob. Thank you. I thank the court for its time. I would hope that we'd ask that you reverse the matter and send it back for perjury trial. Thank you. Thank you. Thank you. Reserved decision. I'm turning to the next case on our calendar, which is Gary Fremont. You know, you can leave the courtroom. Thank you. Thank you.